COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-07-076-CV

 

 

MILLER OF DENTON, LTD.                                                    APPELLANT

 

                                                   V.

 

TEXAS WORKFORCE COMMISSION                                         APPELLEES

AND
MATTHEW L. BENNETT

 

                                              ------------

 

          FROM
COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.                   
Background








This is an unemployment benefits case.  Co-Appellee Matthew L. Bennett (ABennett@)
applied to Co-Appellee Texas Workforce Commission (ATWC@) for unemployment benefits after being
fired from Appellant Miller of Denton (AMiller@). 
TWC originally denied Bennett benefits, but TWC=s
appeal tribunal reversed that decision and determined that Bennett was not
guilty of misconduct connected with his work as a delivery driver. 

Bennett was making a delivery to a Wal-Mart store
located in The Colony, Texas, when the events that led to him being fired from
Miller occurred.  Ms. Coxsey, an employee
of Wal-Mart, testified at trial that Bennett had touched her in an unwanted and
inappropriate mannerCcausing
her to hit Bennett. Specifically, Coxsey complained that Bennett had shoved a
candy wrapper down the front of her blouse. 
Bennett on the other hand, testified that he had merely placed a candy
wrapper on Coxsey=s
shoulder as a joke.  Coxsey told her
manager of the incident, and Wal-Mart informed Miller that Bennett would not be
allowed back into Wal-Mart.  Furthermore,
Wal-Mart informed Miller that if Miller continued to employ Bennett, Miller could
lose Wal-Mart as a customer. The loss of Wal-Mart as a customer would have been
a substantial loss of eight percent of Miller=s
sales as a beer delivery service.   

Miller conducted an investigation into the events
between Coxsey and Bennett and determined that Bennett had conducted himself in
an inappropriate manner.  Miller fired
Bennett and Bennett filed for unemployment benefits with TWC.  In response, Miller filed its AEmployer response to Notice of
Application@ stating
its reason for dismissing Bennett:








[Bennett]
conducted himself in a manner that adversely affected the company=s best interest and reputation.
[Bennett] touched a back door employee of an account in an inappropriate
manner. [Coxsey] felt [Bennett] sexual[ly] assaulted her after she told him to
stop. [Bennett] was terminated immediately.

 

After TWC=s
appeal tribunal determined that Bennett was not guilty of misconduct, and
therefore entitled to unemployment benefits, Miller appealed TWC=s decision to the county court at
law.  Miller=s
petition stated that the TWC=s
appeal tribunal=s
findings of fact and conclusions of law were erroneously based on the wrong
employer policy.  Specifically, Miller
contended that TWC=s
decision was based on Miller=s
sexual harassment policy as opposed to Miller=s
policy regarding misconduct adversely affecting the company=s best interest and reputation.  After a non-jury trial, the trial court
entered a judgment affirming TWC=s
decision.  Miller appealed. 

II.                
Miller=s
Points of Error








In three points, Miller challenges the trial court=s judgment.  First, Miller argues that the trial court
erred in upholding TWC=s
decision because substantial evidence shows that Bennett was properly
terminated for misconduct as a matter of law and, therefore, a reasonable mind
could not agree with TWC=s
ruling or the ruling of the trial court. 
Second, Miller argues that the trial court incorrectly upheld TWC=s decision because there was not
substantial evidence to support that decision; therefore, the decision was
unreasonable, arbitrary, and capricious. 
Finally, Miller argues that the trial court and TWC relied on the wrong
employer policy, ignored the Texas Labor Code=s
definition of misconduct, and applied the wrong standard for misconduct.  We affirm.

III.              
Standard of Review

Judicial review of an administrative decision
regarding a former employee=s
right to unemployment benefits requires a trial de novo with substantial
evidence review.  Tex. Lab. Code Ann. ' 212.202
(Vernon 2006); Collingsworth Gen. Hosp. v. Hunnicutt, 988 S.W.2d 706,
708 (Tex. 1998); Mercer v. Ross, 701 S.W.2d 830, 831 (Tex. 1986); Edwards
v. Tex. Employment Comm=n,
936 S.W.2d 462, 465 (Tex. App.CFort
Worth 1996, no writ).  Under this
standard, TWC=s ruling
is presumptively valid, which places the burden on the party challenging the
agency decision.  Collingsworth Gen.
Hosp., 988 S.W.2d at 708. 








When the trial court examines whether there is
substantial evidence to support an agency=s
decision, it determines whether reasonable minds could have reached the same
conclusion the agency reached.  Dotson
v. Tex. State Bd. of Med. Exam=rs,
612 S.W.2d 921, 922 (Tex. 1981); Edwards, 936 S.W.2d at 465.  While the court will hear and consider
evidence to determine whether reasonable support for the agency=s order exists, the agency remains the
primary fact finding body, and the question for the trial court is strictly one
of law.  Firemen=s & Policemen=s Civil Serv. Comm=n v. Brinkmeyer, 662 S.W.2d 953,
956 (Tex. 1984); Edwards, 936 S.W.2d at 465.  The challenging party must therefore produce
evidence that conclusively negates all reasonable support for the agency=s decision, on any possible
ground.  Brinkmeyer, 662 S.W.2d at
956; Edwards, 936 S.W.2d at 465-66.

The trial court may not set aside a TWC decision
merely because there was conflicting or disputed testimony or because the court
would reach a different conclusion.  Mercer,
701 S.W.2d at 831; Edwards, 936 S.W.2d at 465.  Rather, if the agency heard substantial
evidence supporting either an affirmative or a negative finding, the trial
court must allow the agency=s
order to stand.  Mercer, 701
S.W.2d at 831; Edwards, 936 S.W.2d at 465.  In fact, because substantial evidence is more
than a mere scintilla, but less than a preponderance, the evidence may
preponderate against the decision of the agency, but still amount to
substantial evidence.  City of Houston
v. Tippy, 991 S.W.2d 330, 334 (Tex. App.CHouston
[1st Dist.] 1999, no pet.).  The court
may only set aside the agency=s
decision if it finds the decision Ato
have been made without regard to the law or the facts and therefore was
unreasonable, arbitrary, or capricious.@  Mercer, 701 S.W.2d at 831; Edwards,
936 S.W.2d at 466.

IV.             
Discussion








All three of Miller=s
points can be condensed into the following statement: Considering Miller=s policies and the labor code=s definition of misconduct, no
reasonable mind could uphold TWC=s
decision that Bennett=s
actions did not adversely affect the best interest and reputation of Miller;
therefore, Bennett was properly terminated and not entitled to unemployment
benefits.  We disagree.  

The trial court found that
there was substantial evidence to support TWC=s decision that Bennett was entitled to unemployment benefits.  We must look at the evidence presented to the
trial court.  Nuernberg v. Texas
Employment Comm=n, 858 S.W.2d 364, 365 (Tex. 1993). 
In this case, the TWC=s appeals tribunal=s findings were admitted as evidence and considered by the trial
court; we therefore will include it as part of our review.  See id. However, the record of the TWC
proceedings was not included and therefore will not be included as part of our
review. Id. 








The Texas Labor Code provides
that an individual can be disqualified from unemployment benefits if the
individual was Adischarged
for misconduct connected with the individual=s last work.@ Tex. Lab. Code Ann. ' 207.044(a) (Vernon 2006). 
Further, the labor code provides that misconduct means Amismanagement of a position of employment by action or inaction,
neglect that jeopardizes the life or property of another, intentional
wrongdoing or malfeasance, intentional violation of a law, or violation of a
policy or rule adopted to ensure the orderly work and the safety of employees.@  Id. ' 201.012(a) (Vernon 2006). 
However, not every violation of an employer=s policies will trigger denial of unemployment benefits.   Collingsworth Gen. Hosp., 988 S.W.2d
at 709; see also Santillan v. Wal‑Mart Stores, Inc., 203 S.W.3d
502, 508 (Tex. App.CEl Paso
2006, pet. denied).

Miller argues that TWC used
the wrong policy to determine Bennett=s misconduct.  Miller argues
that TWC used Miller=s sexual
harassment policy to make its determination, rather than the correct policyCMiller=s policy
against Amisconduct of any nature adversely affecting the company=s best interest and reputation.@  Miller points to TWC=s finding that Athe claimant
was fired for allegedly violating [Miller=s] sexual harassment policy.@  Further, Miller points out
that TWC=s conclusion was that the Aevidence establishes that the claimant merely touched [Coxsey=s] shoulder . . . [Bennett] did not violate the employer=s policy and therefore was not guilty of misconduct connected with
work.@  But, Miller contends that
Bennett was not terminated for violating the sexual harassment policy but for
misconduct relating to Miller=s best interest and reputation policy.   

TWC and Bennett argue that
Miller submitted only its sexual harassment policy to TWC when filing its
Employer response to Notice of Application. 
TWC and Bennett also argue that Miller=s failure to submit its best interest policy remains unexplained.  








Miller responds that it
provided TWC with its sexual harassment policy because when Bennett applied for
unemployment benefits he told TWC he was fired for sexual harassment.  Miller further argues that it provided TWC
with its reasoning for firing Bennett, namely, Amisconduct of any nature adversely affecting the company=s best interest and reputation.@  Miller adds that it was
Bennett who confused TWC into applying the wrong policy when he filled out his
application for benefits. 

TWC and Bennett counter that
regardless of which policy Miller now wants to contend was the basis for Bennett=s firing, Miller must produce evidence that conclusively negates all
reasonable support for the agency=s decision, on any possible ground (i.e. regardless of which
policy), and Miller has failed to do so. 
See Brinkmeyer, 662 S.W.2d at 956.  We agree. 









TWC=s appeals tribunal specifically found that Bennett Awas not guilty of misconduct connected with work.@  Furthermore, the tribunal
found that all Bennett had done was Amerely touched [Coxsey=s] shoulder.@  Given these findings, we cannot conclude that
Miller has conclusively negated all reasonable support for the agency=s decision on any possible ground. 
With these same facts, TWC could have also found that Bennett was not
guilty of a violation of the Miller=s best interest and reputation policy. 
Additionally, not every violation of an employer=s policies will trigger denial of unemployment benefits.  See Collingsworth Gen. Hosp., 988
S.W.2d at 709.  TWC could have also found
that the mere touching of Coxsey=s shoulder was insufficient to constitute Amisconduct@ under the
labor code.[2]  See Tex.
Lab. Code Ann. ' 201.012(a).  Based on the record before us, we hold that
the trial court did not err in concluding as a matter of law that reasonable
minds could have reached the same conclusion as TWCCthat Bennett was not guilty of misconduct connected with work and
therefore entitled to benefits. 

V.                
Conclusion

Having overruled Miller=s
three points, we affirm the trial court=s
judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL A:   HOLMAN, GARDNER, and MCCOY, JJ.

 

DELIVERED:
March 27, 2008











[1]See Tex. R. App. P. 47.4.





[2]We do
not address whether Miller=s parroting of the term Amisconduct@ in
its best interest and reputation policy arises to the labor code=s
definition of misconduct.  See Tex. Lab. Code Ann. ' 201.012(a);
see also Collingsworth Gen. Hosp., 988 S.W.2d at 709 (holding that not
every violation of an employer=s policies will trigger
denial of unemployment benefits, rather the violation must amount to Amisconduct@ as
defined in the Texas Labor Code).