

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-21-00283-CV

TEXAS WORKFORCE COMMISSION AND JESSIE J. COTTER, APPELLANTS

V.

R.D. WALLACE OIL CO., INC., APPELLEE

On Appeal from the 286th District Court
Hockley County, Texas
Trial Court No. 170825118, Honorable Pat Phelan, Presiding

November 9, 2022

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS, and YARBROUGH, JJ.

Appellants, the Texas Workforce Commission and Jessie J. Cotter, appeal from the district court's judgment reversing the Commission's grant of unemployment benefits to Cotter, a former employee of Appellee R.D. Wallace Oil Co., Inc. For the reasons expressed below, we reverse the district court's judgment and render judgment granting Cotter the unemployment benefits awarded him.

Background

Wallace's business includes transporting gasoline and diesel fuel. Between July 2016 and February 2017, it employed Cotter as a fuel-transport truck driver.

On February 3, 2017, Cotter picked up a load of diesel fuel at the Big Spring, Texas terminal. His transport tanker was marked with a placard bearing the number "1203," intended to communicate the transport of gasoline. By regulation, a load of diesel fuel must bear the placard designation "1993." Cotter testified that on that day all six compartments of his tanker were loaded with diesel. Apparently, Cotter learned of the incorrect placard from another driver. Cotter said he then performed his own research and concluded his load was improperly designated.

The following day, Cotter was instructed to transport a load of diesel fuel from Big Spring to Morton, Texas. Cotter had already telephoned Wallace employee Stephen Tanner to inform him that the diesel load was improperly designated and that Cotter would not be transporting it as currently designated. Tanner, who was responsible for overseeing Wallace's daily work, disagreed that the load was improperly labeled.[1] Cotter refused to drive the tanker containing the 1203 placard; he requested another load. Tanner became upset and told Cotter that if he would not take the load for delivery "we did not need him." According to an audio recording of the telephone conversation between Cotter and Tanner, the following exchange occurred:

Tanner: "Go haul your load and don't worry about your placards."

---

[1] Some of this disagreement centered around whether the load could retain the 1203 placard so long as residual gasoline remained on the tanker.

Cotter: "Well, I'm gonna have to refuse that load then."

Tanner: "Well then you're fired. If you refuse the load I don't need you."

Cotter: "Okay. Well do you have a gasoline load I can haul?"

Tanner: "I do not. Jesse I got the load I gave you. The placards don't matter."

Cotter testified that based on this call he believed he was fired. Sometime between fifteen minutes to a full-hour later, Tanner sent a text message to Cotter offering him a load of gasoline. Cotter declined, responding that he was fired for refusing an illegal load and had already begun looking for another job. Tanner replied that Cotter had not been fired.

John Wallace, company vice president and manager of its Levelland facility, testified he prepared a letter of resignation, and that Cotter had signed it. However, Wallace was never able to produce a copy of the letter. Cotter denied resigning and said Wallace's letter was for another purpose.

Cotter applied for unemployment benefits. Benefits were initially denied, but were ultimately awarded by the Commission. The Commission's order adopted the Appeal Tribunal's findings of fact that largely tracked Cotter's account of the events of February 3-4, 2017.[2] The Commission also adopted the Appeal Tribunal's conclusions, which read in relevant part:

> In the case on appeal, the evidence presented establishes that the employer discharged the claimant for refusing to perform his assigned job duties. The employer is the party that initiated the job separation when it gave an ultimatum to the claimant to either transport the fuel or he was discharged. An inherent component of any employment relationship is the implicit duty for employees to carry out lawful and reasonable directions from their employers. However . . . an employee's refusal to follow an

[2] Those findings were admitted into evidence in the district court.

3

employer's directive is not misconduct if the refusal is in response to an unconscionable act of the employer.

Wallace sued for judicial review of the Commission's decision. Following the hearing, the district court signed a judgment on August 20, 2021, which denied unemployment compensation to Cotter. The judgment found there was "no more than a scintilla of evidence supporting the findings of the administrative decision of the Texas Workforce Commission that the Defendant Cotter was entitled to unemployment benefits," and that Cotter had voluntarily resigned his position with Wallace.

Cotter and the Commission then brought appeal to this Court.

Analysis

Through a single issue, the Commission and Cotter argue the trial court reversibly erred in denying unemployment benefits because substantial evidence supported the Commission's decision. Commission decisions concerning entitlement to benefit payments are subject to trial de novo review, with the trial court determining whether substantial evidence supports the agency's ruling. *See* TEX. LAB. CODE ANN. § 212.202(a*); Collingsworth Gen. Hosp. v. Hunnicutt,* 988 S.W.2d 706, 708 (Tex. 1998); *Mercer v. Ross,* 701 S.W.2d 830, 831 (Tex. 1986). The trial court conducts an evidentiary trial to "determine whether the agency's ruling is free of the taint of any illegality and is reasonably supported by substantial evidence." *Edwards v. Tex. Emp't Comm'n,* 936 S.W.2d 462, 465 (Tex. App.—Fort Worth 1996, no writ). Because "substantial evidence" means more than a mere scintilla, it may be satisfied even when the record evidence preponderates against the Commission's decision. *PUC v. Tex. Indus. Energy*

4

*Consumers,* 620 S.W.3d 418, 427 (Tex. 2021). Determining whether substantial evidence supports the Commission's decision is a question of law. *Arrellano v. Tex. Employment Comm'n,* 810 S.W.2d 767, 770 (Tex. App.—San Antonio 1991, writ denied).

The Texas Unemployment Compensation Act provides that "[a]n individual is disqualified for benefits if the individual was discharged for misconduct connected with the individual's last work." TEX. LAB. CODE ANN. § 207.044(a). Under the Act misconduct is defined as "mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees." TEX. LAB. CODE ANN. § 201.012(a). However, the definition of misconduct does not include an employee's action in response to an employer's unconscionable act. TEX. LAB. CODE ANN. § 201.012(b).

An individual is also disqualified for unemployment benefits "if the individual left the individual's last work voluntarily without good cause connected with the individual's work." TEX. LAB. CODE ANN. § 207.045(a). Because "good cause," is not defined in the Labor Code, this Court has previously looked to the definition found in the Commission's "Appeals Policy and Precedent Manual" to mean, "such cause, related to the work, as would cause a person who is genuinely interested in retaining work to nevertheless leave the job." *See Tex. Workforce Comm'n v. Dental Health for Arlington, Inc.,* 624 S.W.3d 68, 75–76 (Tex. App.—Amarillo 2021, pet. denied).

The record evidence, reviewed under the proper standard, indicates that regulation requires a load of diesel fuel to bear a 1993 placard. In February 2017, Cotter was

5

assigned a full load of diesel fuel for transport; he declined the load. When Cotter told Tanner why he was refusing the load, Tanner responded that Cotter was fired if he refused the load.

Moreover, Wallace's subsequent offer that Cotter transport a different, legal load does not invalidate its termination of Cotter. The Commission's rejection of Wallace's position that Cotter signed a resignation letter is supported by its assessment of the parties' credibility, Wallace's inability to produce a supporting document, and Cotter's different description of the letter that was prepared.

Therefore, the record contains more than a scintilla of evidence that Cotter was not discharged from employment with Wallace because of misconduct connected with his work for Wallace, but for refusing to transport fuel in a manner contrary to regulation. The record also contains more than a scintilla of evidence that Cotter did not voluntarily sever his employment with Wallace but was terminated by Tanner during a telephone conversation. We conclude the evidence introduced before the district court shows facts existing at the time of TWC's decision that reasonably support that agency's decision. *Hunnicutt,* 988 S.W.2d at 708. Appellants' issue is sustained.

## Conclusion

Having sustained Appellants' issue, we reverse the trial court's judgment in favor of Wallace and render judgment affirming Cotter's TWC award of unemployment benefits. TEX. R. APP. P. 43.2(c).

Lawrence M. Doss
Justice